**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

UNITED STATES OF AMERICA,

                                        Plaintiff,

        v.                                                      1:25-CR-00335 (AMN)

ANGEL GUAMAN-PAQUI,

                                        Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **United States Attorney for the** **Northern District of New York** 445 Broadway – Room 218 Albany, New York 12207 *Counsel for the Government* | **RICHARD BELLISS, ESQ.** Assistant United States Attorney |
| **Federal Public Defender for the** **Northern District of New York** 54 State Street – Suite 310 Albany, New York 12207 *Counsel for Defendant* | **JEREMY B. SPORN, ESQ.** Assistant Federal Public Defender |

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Defendant Angel Guaman-Paqui is charged with one count of illegally re-entering the United States after having previously been removed, a violation of 8 U.S.C. § 1326(a).  *See* Dkt. No. 14 (the "Indictment").  Presently before the Court is Defendant's pretrial motion to dismiss the Indictment for failure to state an offense pursuant to Rule 12 of the Federal Rules of Criminal Procedure, on the ground that his prior expedited removal was defective and thus cannot form the

basis for the instant charge.  Dkt. No. 24 (the "Motion").  The Government filed an Opposition to the Motion, Dkt. No. 25, and Defendant filed a Reply in support of the Motion.  Dkt. No. 28.

For the reasons set forth below, Defendant's Motion is denied.

## II.    BACKGROUND

Defendant is a citizen and national of Ecuador.  Dkt. No. 1 at 2.[1]  On April 22, 2019, Defendant entered into the United States from Mexico and was subsequently detained by United States Customs and Border Patrol agents near Presidio, Texas.  *Id.*  On April 25, 2019, Defendant was charged with one count of illegal entry under 8 U.S.C. § 1325(a)(1) in the Western District of Texas.  Dkt. No. 25 at 6-8.  That same day, Defendant pled guilty and was sentenced to time served. *Id.*  On May 8, 2019, an asylum officer conducted an interview of Defendant and found that Defendant had a credible fear of persecution based on Defendant's bisexuality and country of origin.  *See* Dkt. No. 24, Ex. C at 18-19.  On May 15, 2019, the Department of Homeland Security ("DHS") issued Defendant a Notice To Appear before an immigration judge.  Dkt. No. 1 at 3; *see also* Dkt. No. 24-3.

On August 20, 2019, Defendant appeared for his first master calendar hearing, during which U.S. Immigration Judge Lorely Fernandez ("IJ") provided Defendant with an asylum application and indicated that it must be completed in English and submitted by September 5, 2019, Defendant's next hearing date.  *See* Dkt. No. 24, Ex. F-1 at 15:06-53.  The IJ also advised that if Defendant failed to timely submit his asylum application by September 5, 2019, "the court can deem it abandoned and [the] opportunity to apply for asylum waived."  *Id.* at 16:18-30.  During an individual hearing that same day, Defendant confirmed receipt of his notice to appear and

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF docketing system and not the documents' internal pagination.

confirmed the allegations contained in the notice to appear.  Dkt. No. 24, Ex. F-2 at 0:15-2:13.
The IJ then found Defendant removable and sustained the charges of inadmissibility in the notice
to appear.  *Id.* at 2:14-21.  The IJ then asked what country Defendant would like to be removed to,
in the event that she had to order him removed.  *Id.* at 2:30-40.  Defendant declined to identify a
specific country, and so the Court directed Ecuador as the country of removal.  *Id.* at 2:41-52.  The
IJ then asked Defendant if he had a passport or other travel document to return to Ecuador, and
Defendant responded that he had an identification card.  *Id.* at 2:53-3:03.  The IJ noted that an
identification card is not a travel document.  *Id.* at 3:04-05.  After Defendant affirmed that he still
had a fear of returning to Ecuador, the IJ reminded Defendant to complete his asylum application
by September 5, 2019.  *Id.* at 3:06-20.

Defendant also appeared for his initial bond hearing on August 20, 2019.  *See generally*
Dkt. No 24, Ex. F-3; Dkt. No. 24-5.  But because Defendant appeared without his attorney, the IJ
did not make a ruling, and instead gave Defendant more time to consult with his attorney.  *See*
Dkt. No 24, Ex. F-3.  On September 3, 2019, Defendant's immigration attorney, Alfonso Figueroa,
appeared and represented Defendant during his bond hearing.  *See generally* Dkt. No. 24, Ex. F-
4; *see also* Dkt. No. 24-9 at ¶ 11.  During the bond hearing, Mr. Figueroa stated that he was notified
that U.S. Immigration and Customs Enforcement ("ICE") possessed Defendant's travel
documents.  Dkt. No. 24, Ex. F-4 at 4:30-5:07.  The IJ denied Defendant bond, concluding that
Defendant had insufficient ties to the United States.  *Id.* at 7:30-42.  At each of these hearings,
Defendant appeared with the assistance of a Spanish interpreter.  *See generally* Exhibit F.

On September 5, 2019, Defendant appeared *pro se* for his removal proceeding, again with
the assistance of a Spanish interpreter.  *See generally* Dkt. No. 24, Ex. F-5.  During the hearing,
Defendant affirmed that he failed to complete his asylum application and asked for more time to

complete the application because he did not understand English, stating that he was not provided with a Spanish version of the application and he was unable to acquire assistance to complete the application. *Id.* at 0:35-2:30. Defendant further explained that his family was attempting to hire an attorney, given that Mr. Figueroa was not answering his calls. *Id.* at 1:17-21, 3:26-58. The IJ stated that an inability to speak English was not a satisfactory reason for failing to complete the asylum application and advised Defendant that the detention facility's library contained a Spanish version of the asylum application. *Id.* at 4:00-5:10. Defendant then requested voluntary departure, if he would be given no additional time to complete his asylum application. *Id.* at 5:19-24. The IJ explained that voluntary departure would only be available if Defendant withdrew his application for asylum. *Id.* at 5:25-34. The IJ then asked the Defendant whether (i) he was voluntarily withdrawing his asylum application; and (ii) whether Defendant's decision was freely made, and Defendant responded "yes" to both questions. *Id.* at 5:35-6:34.

Regarding Defendant's request for voluntary departure, the IJ noted that she had asked Defendant in an earlier hearing whether he had a passport or travel document to return to Ecuador, and Defendant stated that he only had an identification card. *Id.* at 6:35-49. Defendant affirmed that this was correct, and the IJ asked Defendant again if he had "a passport or travel document to return to Ecuador," and Defendant responded "no." *Id.* at 6:50-7:00. The IJ subsequently explained that the regulations require that Defendant be able to produce a travel document within 60 days of an order of removal and thereafter concluded that she could not grant Defendant voluntary departure "because the regulation does not allow it." *Id.* at 7:18-36. The IJ accordingly denied Defendant's request for voluntary removal and entered an order for his removal. *Id.* at 7:37-45. The IJ subsequently asked whether he accepted her decision as final or if he wished to appeal the order of removal, to which Defendant replied, "yes, it's fine then to be removed." *Id.*

at 7:46-8:00.  But when the IJ sought to confirm that Defendant indeed waived his right to appeal, Defendant asked for more time to present his asylum application.  *Id.* at 8:01-27.  The IJ reminded Defendant that he voluntarily agreed to withdraw his asylum application in order to be considered for voluntary removal, and asked whether he was changing his mind.  *Id.* at 8:28-56.  The IJ further explained that she denied Defendant voluntary removal because he did not have travel documents.  *Id.* at 8:48-52.  Defendant indicated that he did not understand.  *Id.* at 8:57-9:00.  The IJ then asked again if Defendant accepted her decision to remove him to Ecuador as final, and he replied, "yes." *Id.* at 9:01-12.  The IJ then adjourned the removal hearing, *id.* at 9:13-15, and on October 4, 2019, Defendant was removed to Ecuador.  Dkt. No. 25 at 12.

Approximately five and a half years later, on or about June 21, 2025, Defendant was found near Albany, New York and charged by criminal complaint with the instant offense.  Dkt. No. 1. On August 19, 2025, the Grand Jury indicted Defendant on one count of illegal re-entry in violation of 8 U.S.C. § 1326(a).  Dkt. No. 14.

### III.    STANDARD OF REVIEW

Rule 12(b)(1) allows a party to raise by pretrial motion "any defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).  Such pre-trial motions include a motion alleging a "defect in the indictment" such as "failure to state an offense."  Fed. R. Crim. P. 12(b)(3)(B)(v); *accord United States v. Black*, No. 06-cr-1079, 2007 WL 683996, at *1, 1 n.4 (S.D.N.Y. Mar. 6, 2007).  "The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights."  *United States v. Espinoza*, 442 F. Supp. 3d 596, 603 (S.D.N.Y. 2020) (quoting *United States v. Bustos De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001)).  In evaluating a motion to dismiss an indictment under Rule 12(b), courts generally "accept[ ] as true all of the

allegations of the indictment." *United States v. Greenberg*, No. 21-cr-92, 2022 WL 827304, at *1 (S.D.N.Y. Mar. 9, 2022) (quoting *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985)).

## IV.    DISCUSSION

A defendant "charged with illegally re-entering the United States after being removed 'can defend against this charge by challenging the validity of the deportation order upon which the charge is predicated.'" *United States v. Martinez-Castillo*, No. 23-cr-205, 2023 WL 4764025, at *2 (S.D.N.Y. July 26, 2023) (quoting *United States v. Calderon*, 391 F.3d 370, 374 (2d Cir. 2004)). "To do so successfully, the defendant must demonstrate that '(1) he exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the defendant of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.'" *United States v. Rodriguez*, No. 24-2059, 2025 WL 3637244, at *3 (2d Cir. Dec. 16, 2025) (quoting 8 U.S.C. § 1326(d)) (brackets omitted).

Regarding the third prong of 8 U.S.C. § 1326(d), Defendant argues that his prior removal was fundamentally unfair because (i) Mr. Figueroa provided ineffective assistance of counsel by failing to appear at Defendant's removal proceeding and by failing to file an asylum application on his behalf; (ii) the IJ failed to provide Defendant with more time to complete and file his asylum application or obtain new counsel; (iii) the IJ denied Defendant's application for voluntary departure because of perceived travel document deficiencies; and (iv) the IJ failed to make Defendant aware of other forms of relief like withholding of removal or withdrawal of the application for admissions. *See* Dkt. No. 24 at 14-31. The Government contends that Defendant fails to show that his prior order of removal was fundamentally unfair because Defendant failed to comply with the IJ's asylum application filing deadline, then knowingly and intelligently withdrew

his asylum application.  *See* Dkt. No. 25 at 4.

Regarding the first two prongs of 8 U.S.C. § 1326(d), Defendant argues that his waiver of appeal was not knowing or voluntary, which excused him from exhausting administrative remedies and improperly deprived him of the opportunity for judicial review.  *See* Dkt. No. 24 at 31-35.  In response, the Government contends that Defendant knowingly and intelligently waived his right to appeal the IJ's order of removal and had "plenty of time" between his removal hearing on September 5, 2019, and his deportation on October 4, 2019, to flag any errors to the Board of Immigration Appeals through administrative review or to seek judicial review through a habeas petition.  *See* Dkt. No. 25 at 4.

### A.  Fundamental Unfairness

The Court begins its analysis with the third prong of Section 1326(d), fundamental unfairness, which is the focus of the Parties' arguments.  To establish fundamental unfairness under 8 U.S.C. § 1326(d)(3), the defendant must "show both [i] a fundamental procedural error, and [ii] prejudice resulting from that error."  *United States v. Fernandez-Antonia*, 278 F.3d 150, 159 (2d Cir. 2002).  "The alien bears the burden of showing that entry of the removal order was fundamentally unfair."  *United States v. Daley*, 702 F.3d 96, 100 (2d Cir. 2012).

Thus, the Court first considers whether the IJ committed a fundamental procedural error.

### 1.  Ineffective Assistance of Counsel

First, Defendant contends that his deportation proceedings were fundamentally unfair because Defendant lacked the effective assistance of counsel.  *See* Dkt. No. 24 at 14-18.  Particularly, Defendant contends that Mr. Figueroa failed to appear at his removal hearing on September 5, 2019 and file Defendant's asylum application on his behalf.  *Id*. at 16.  To prevail on a claim of ineffective assistance of counsel, Defendant "must show that his counsel's performance

7

was so ineffective as to have impinged upon the fundamental fairness of the hearing" in violation of the Due Process Clause of the Fifth Amendment. *United States v. Perez*, 330 F.3d 97, 101 (2d Cir. 2003) (quoting *Saleh v. United States Dep't of Justice,* 962 F.2d 234, 241 (2d Cir.1992)). To show fundamental unfairness, Defendant must allege facts sufficient to show that "competent counsel would have acted otherwise," and that Defendant "was prejudiced by his counsel's performance." *Flores v. Bondi*, 152 F.4th 73, 80 (2d Cir. 2025) (quoting *Rabiu v. I.N.S.*, 41 F.3d 879, 882 (2d Cir. 1994)). Regarding competence, Defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011)).

Here, the only documentation in the record indicates that Defendant hired Mr. Figueroa exclusively for his custody and bond proceedings. On August 15, 2019, Mr. Figueroa filed a Form EOIR-28 entering his appearance on behalf of Defendant, and checked the box indicating that his entry of appearance is for "custody and bond proceedings only." *See* Dkt. No. 24-4 at 1. Mr. Figueroa thereafter appeared and represented Defendant during his bond hearing on September 3, 2019, *see* Dkt. No. 24, Ex. F-4, and did not appear in Defendant's removal proceedings. Dkt. No. 24-9 at ¶ 12. Therefore, Defendant fails to establish that Mr. Figueroa was incompetent during his removal proceedings by failing to appear or by failing to complete Defendant's asylum application because the scope of Mr. Figueroa's representation was limited to his custody and bond proceedings only.[2]

Accordingly, the Court finds that Defendant fails to show ineffective assistance of counsel.

---

[2] While Defendant may have understood that Mr. Figueroa's representation extended to his removal proceedings, *see* Dkt. No. 24-9 at ¶ 12, the record contains no evidence supporting such understanding.

## 2. Asylum Application

Second, Defendant argues that the IJ committed a fundamental procedural error by refusing to accord Defendant more time to complete his asylum application or obtain another attorney. *See* Dkt. No. 24 at 18-20. Pursuant to 8 C.F.R. § 1003.31, "an IJ has broad discretion to set and extend filing deadlines." *Dedji v. Mukasey*, 525 F.3d 187, 191 (2d Cir. 2008). An IJ abuses her discretion in setting and enforcing deadlines when "(1) h[er] decision rests on an error of law . . . or a clearly erroneous factual finding or (2) h[er] decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Id.* at 191-92 (quoting *Morgan v. Gonzales*, 445 F.3d 549, 551-52 (2d Cir. 2006)).

Defendant was present at the August 20, 2019 hearing, during which the IJ distributed an application for asylum and advised that the asylum application must be completed in English and submitted on or before Defendant's next hearing date—September 5, 2019. *See* Dkt. No. 24, Ex. F-1 at 15:06-53. Thus, Defendant had approximately sixteen days to complete his application. *See* Dkt. No. 24 at 18. During this hearing, the IJ also advised Defendant that failure to timely submit an asylum application would result in abandonment or denial of his asylum claim. Dkt. No. 24, Ex. F-1 at 16:18-30.[3] Moreover, the entire hearing was simultaneously interpreted in Spanish. *See generally id.* Thus, the IJ gave Defendant proper notice of the submission deadline for asylum applications.

Subsequently, on September 5, 2019, Defendant appeared before the IJ for his removal

---

[3] According to 8 C.F.R. § 1003.31(h), "when 'an application or document is not filed within the time set by the IJ, the opportunity to file that application or document shall be deemed waived[.]'" *Nieto-Gonzalez v. Garland*, No. 19-4367, 2023 WL 2530743, at *1 (2d Cir. Mar. 16, 2023) (quoting 8 C.F.R. § 1003.31(h)) (brackets omitted); *see also* U.S. Dep't of Just., Immigr. Ct. Prac. Manual § 3.1(d)(2) (noting that "if an application for relief is untimely, the alien's interest in that relief is deemed waived or abandoned").

hearing, which was again simultaneously interpreted in Spanish. *See generally* Dkt. No. 24, Ex. F-5. During the hearing, Defendant affirmed that he had not completed his asylum application by the deadline because he did not understand English. *Id.* at 0:35-1:10. But during the proceeding, the IJ made no finding as to Defendant's application for asylum, including whether to grant Defendant an extension to complete the application or whether to deem his application waived or abandoned, because Defendant voluntarily withdrew his application for asylum. *See id.* at 5:19-6:34. Indeed, the IJ asked Defendant whether he was voluntarily withdrawing his asylum application and whether his decision was freely made, and Defendant replied "yes" to both questions. *Id.* at 5:35-6:34.

Accordingly, the Court finds that the IJ did not abuse her discretion by failing to accord Defendant more time to complete his asylum application or obtain new counsel.

### 3.  Voluntary Departure

Third, Defendant argues that the IJ's decision to deny Defendant's application for voluntary departure amounted to a fundamental procedural error. *See* Dkt. No. 24 at 20-24. "Voluntary departure is a discretionary form of relief that allows certain favored aliens . . . to leave the country willingly." *Dada v. Mukasey*, 554 U.S. 1, 8 (2008). A noncitizen qualifies for voluntary departure if he satisfies certain eligibility requirements, including that he "has established by clear and convincing evidence that [he] has the means to depart the United States[.]" 8 U.S.C. § 1229c(b)(1). Specifically, to establish a means to depart by clear and convincing evidence, a noncitizen must present his "passport or other travel document sufficient to assure lawful entry into the country to which [he] is departing," unless (i) "[a] travel document is not necessary to return to [his] native country or to which country [he] is departing"; or (ii) "[t]he document is already in the possession of DHS." 8 C.F.R. § 1240.26(b)(3)(i), (c)(2). Furthermore,

"[i]f such documentation is not immediately available to the alien," he "must secure such documentation and present it to DHS" within 60 days.  8 C.F.R. § 1240.26(b)(3)(ii).

Here, during Defendant's removal hearing, the IJ asked Defendant whether he currently possessed a passport or travel document to return to Ecuador.  Defendant replied that he did not.  Dkt. No. 24, Ex. F-5 at 6:50-7:00.  The IJ then stated as follows:

> Well, sir, the regulation requires that I have – or that you be able to produce a travel document within 60 days of my order.  If you don't have one, I cannot grant you voluntary departure, because the regulation does not allow it.  So, I'm going to enter an order of removal, ordering you removed to Ecuador.

*Id.* at 7:18-45.  Towards the conclusion of the removal hearing, the IJ reiterated that she denied Defendant voluntary removal "because [he] [didn't] have travel documents."  *Id.* at 8:48-52.

While Defendant notes that Mr. Figueroa testified during Defendant's bond hearing that he "w[as] notified" that Defendant's travel documents "are being held by ICE," *see* Dkt. No. 24, Ex. F-4 at 5:00-07, the record does not establish that ICE did indeed possess Defendant's passport.  To the contrary, according to DHS Form I-217, Defendant was not in possession of a travel document or passport at the time he entered the United States.  *See* Dkt. No. 24, Ex. M at 1.  Form I-217 also attaches a photocopy of Defendant's Ecuadorian identification card but does not attach a photocopy of a passport.  *Id.* at 3.  Moreover, during Defendant's hearing on August 20, 2019, the IJ asked Defendant if he had a passport or other travel document to return to Ecuador, and Defendant responded that he had an identification card.  *See* Dkt. No. 24, Ex. F-2 at 2:53-3:03.  During his removal hearing on September 5, 2019, Defendant again affirmed that he only possessed an identification card and did not have a passport or other travel document to return to Ecuador.  Dkt. No. 24, Ex. F-5 at 6:35-7:00.  After Defendant was ordered removed, Defendant was issued a passport by Ecuador on September 17, 2019, at the request of DHS for purposes of deporting him to Ecuador.  *See* Dkt. No. 24, Ex. L; *see also* Dkt. No. 24-9 at ¶ 20.

Thus, Defendant failed to produce clear and convincing evidence in the course of his removal proceedings indicating that he would be able to present a valid passport or travel document that would assure him lawful entry into Ecuador. Accordingly, the Court finds that the IJ's denial of Defendant's application for voluntary departure does not constitute a fundamental procedural error.

### 4.  Other Forms of Relief

Lastly, Defendant argues that the IJ committed a fundamental procedural error by failing to advise Defendant of his eligibility for other forms of relief, such as withholding of removal or withdrawal of the application for admissions. *See* Dkt. No. 24 at 24-31.

### i.    Withholding of Removal

While district courts in this Circuit have found that failure to advise a noncitizen of his right to seek voluntary departure is a fundamental procedural error, s*ee, e.g.*, *United States v. Guzman*, No. 18-cr-216, 2018 WL 3443158, at *4 (S.D.N.Y. July 17, 2018); *United States v. Brown*, 354 F. Supp. 3d 362, 370 (S.D.N.Y. 2018); *United States v. Gonzalez*, No. 15-cr-21, 2015 WL 3443942, at *9 (S.D.N.Y. May 29, 2015), courts have not found similar error with regard to withholding of removal. In order to apply for asylum, a noncitizen must complete an "Application for Asylum and for Withholding of Removal," referred to as "Form I-589." *See* Dkt. No. 25 at 14-25. In the application, the noncitizen must also indicate whether, in addition to applying for asylum, he is also applying for withholding of removal. *See id.* at 14. In other words, Form I-589 is used to apply for both asylum and withholding of removal because the eligibility requirements are similar.[4] However, if an application for asylum and for withholding of removal is incomplete,

---

[4] Withholding of removal, as compared to asylum, "requires the applicant to clear a higher bar" and "is reserved for applicants who demonstrate a clear probability of future persecution." *Liang v. Garland*, 10 F.4th 106, 112 (2d Cir. 2021) (internal quotation marks and citations omitted).

an IJ "is not required to consider it on the merits" and "incomplete applications may be considered waived or abandoned[.]" *Matter of C-A-R-R*, 29 I&N Dec. 13, 15 (BIA 2025) (citing *Matter of Interiano-Rosa*, 25 I&N Dec. 264, 265 (BIA 2010) (noting that "[a]n application or document that is not filed within the time established by the [IJ] may be deemed waived")).

Here, Defendant did not timely file a completed application for asylum and withholding of removal, as he failed to complete Form I-589 prior to his removal hearing. *See* Dkt. No. 24, Ex. F-5 at 0:35-1:10. Accordingly, Defendant waived his right to apply for withholding of removal. *See Matter of R-C-R-*, 28 I&N Dec. 74, 79 (BIA 2020) (citing *Matter of R-R-*, 20 I&N Dec. 547, 549 (BIA 1992) (noting that "applications for benefits . . . are properly denied as abandoned when the alien fails to timely file them")).

Thus, the Court finds that the IJ's failure to advise Defendant of his potential eligibility for withholding of removal does not constitute a fundamental procedural error.

### ii. Withdrawal of Application for Admission

Defendant's argument that the IJ's failure to inform him that he could request to withdraw his application for admission is also unavailing. Pursuant to 8 C.F.R. § 1235.4, "[t]he Attorney General may, in his or her discretion, permit any alien applicant for admission to withdraw his or her application for admission in lieu of removal proceedings[.]" 8 C.F.R. § 1235.4. But "[t]his provision says nothing about the right of an alien to be informed about the Attorney General's ability to exercise her discretion." *Espinoza*, 442 F. Supp. 3d at 609. The statute merely states that relief can only be granted by the Attorney General in his or her discretion. Moreover, the regulations explain that "nothing in this section shall be construed as to give an alien *the right* to withdraw his or her application for admission." 8 C.F.R. § 1235.4 (emphasis added). Therefore, the IJ's "failure to inform [Defendant] of his ability to request withdrawal of his application for

admission did not violate his due process rights." *United States v. Gonzalez*, No. 19-cr-530, 2021 WL 1254558, at *5 (E.D.N.Y. Apr. 5, 2021) (citations omitted).

Accordingly, the Court concludes that the failure to advise Defendant of his right to request withdrawal of his application for admission was not a fundamental procedural error.

\* \* \*

For the foregoing reasons, the Court finds that Defendant cannot demonstrate that the entry of his deportation order was fundamentally unfair under Section 1326(d)(3). Accordingly, Defendant's Motion is denied.[5]

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendant's Motion to dismiss the Indictment, Dkt. No. 24, is **DENIED;** and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  January 30, 2026
        Albany, New York

Anne M. Nardacci
U.S. District Judge

---

[5] Because the Court finds that Defendant cannot establish fundamental unfairness, it need not determine whether Defendant's failure to exhaust his administrative remedies and seek judicial review, pursuant to Section 1326(d)(1) and (d)(2), bars his collateral challenge to the validity of his removal order. *See United States v. Rodriguez*, 722 F. Supp. 3d 264, 269 n.3 (S.D.N.Y. 2024).